UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 03 \| 18 \| 2017 |

TULEN RIVERA,

                            Plaintiff,

            -against-

CHILDREN'S & WOMEN'S
PHYSICIANS OF WESTCHESTER, LLP,

                            Defendant.

**MEMORANDUM
OPINION & ORDER**

16 Civ. 714 (PGG) (DCF)

PAUL G. GARDEPHE, U.S.D.J.:

Pro se Plaintiff Tulen Rivera brings this action under Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment

Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., alleging that her former employer, Children's

and Women's Physicians of Westchester, LLP ("CWPW"), discriminated and retaliated against

her. (See Cmplt. (Dkt. No. 2)) Defendant has moved to dismiss the Complaint pursuant to Fed.

R. Civ. P. 12(b)(6). (Dkt. No. 10)

        In an October 20, 2016 order, this Court referred the motion to Magistrate Judge

Freeman for a Report and Recommendation ("R & R"). (Dkt. No. 19) On December 30, 2016,

Judge Freeman issued an R & R recommending that the Complaint be dismissed without

prejudice for failure to prosecute, because Plaintiff had not responded to (1) an October 24, 2016

order directing Plaintiff to file an opposition to the motion to dismiss; or (2) a December 1, 2016

order to show cause why this action should not be dismissed for failure to prosecute. (Dkt. No.

24) This Court declines to adopt the R & R, notwithstanding Plaintiff's failure to respond to the

magistrate judge's orders. Having considered the merits of Defendant's motion to dismiss, this

Court concludes that it should be granted.

## BACKGROUND

### I.  FACTS[1]

#### A.  Plaintiff's Employment with CWPW

Plaintiff is a Muslim woman of Turkish national origin.  (Cmplt. (Dkt. No. 2) ¶¶ 3-4)  Between 2009 and 2014, Plaintiff was employed by Children's and Women's Physicians of Westchester, LLP ("CWPW"), a general and specialty pediatric medical practice with offices in the New York metropolitan area.  (Id. ¶¶ 5, 7, 23)  Plaintiff was hired as a Medical Assistant on November 16, 2009.  (Id. ¶ 7)

In July 2013, Plaintiff learned that CWPW "paid other less qualified, junior medical assistants an hourly rate greater than [what she] was paid."  (Id. ¶ 9)  Although Plaintiff was assured by CWPW Executive Board Member Dr. Martin Katzenstein and Operations Manager Karen Villemenia that her hourly wage "would be increased to reflect [her] qualifications, experience and tenure," Plaintiff's compensation "remained lower" than that paid to "less qualified junior medical assistants."  (Id. ¶ 10)

In August 2013, Plaintiff applied for an open position as Operations Manager at CWPW's Woodlawn Office.  (Id. ¶ 11)  CWPW chose another employee, Paulette Katzenstein – who is Jewish – for the position, despite the fact that Katzenstein "was less qualified" and "constantly relied upon [Plaintiff] for guidance on the day-to-day tasks of the position" after she was hired.  (Id. ¶¶ 12-14)  When Plaintiff asked Elissa Leffler, CWPW's Practice Operations Administrator, why she was not selected for the position, Leffler stated, "you will never get that position[, because] you're not Jewish."  (Id. ¶ 15)

---

[1]  The Court's factual statement is drawn from the Complaint.

In January 2014, CWPW hired Stella Colombi for the position of front desk receptionist and paid her an hourly wage higher than what Plaintiff received as a Medical Assistant. (Id. ¶ 16)  In June 2014, Colombi was promoted to Assistant Manager.  In her new position, Colombi was paid at a "significantly" higher rate than Plaintiff. (Id. ¶ 18)  The Complaint asserts that Colombi is neither Muslim nor Turkish. (Id. ¶ 17)

In June 2014, shortly after Colombi's promotion to Assistant Manager, Plaintiff contacted Dr. Martin Katzenstein – an Executive Board Member at CWPW – to complain about the unlawful employment discrimination she had suffered. (Id. ¶¶ 18-19)  Dr. Katzenstein scheduled a meeting for June 20, 2014, but he did not appear for the meeting. (Id. ¶ 20)  On July 15, 2014, Plaintiff sent an email to four CWPW managers – Robert Shaw, CWPW's Chief Operating Officer, Jaclyn Montesarchio, CWPW's Human Resources Manager, Elissa Leffler, CWPW's Practice Operations Administrator, and Paulette Katzenstein, Operations Manager of CWPW's Woodlawn Office – setting forth her claims of "discriminatory employment pay and hiring practices." (Id. ¶ 21)  Plaintiff received no response to her email. (Id. ¶ 22)

On August 1, 2014 – "a little more than two weeks after [Plaintiff] sent CWPW [the] email complaining of its discriminatory employment practices" – Leffler informed Plaintiff that her employment at CWPW had been terminated. (Id. ¶ 23)  Although "CWPW purported to terminate [Plaintiff's] employment because of an argument [she] had with a co-worker[,] Myrna Gonzalez," Plaintiff claims that this was a "pretext." (Id. ¶¶ 24-25)[2]

---

[2]  Although Plaintiff has checked off a box in her form Complaint indicating that she is bringing a claim under the ADEA, Plaintiff has pled no facts concerning her age. (See Cmplt. (Dkt. No. 2) at 3)

### B.      Proceedings Before the State Division of Human Rights

On March 17, 2015, Plaintiff filed a complaint with the New York State Division

of Human Rights ("SDHR"), alleging discrimination on the basis of Plaintiff's "religion and

national origin," in violation of the New York State Human Rights Law ("NYSHRL"), N.Y.

Exec. Law § 290, et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. §

2000e et seq. (Cmplt. (Dkt. No. 2) at 7-9)[3]  Plaintiff also alleged that CWPW had terminated her

employment in retaliation for her complaints about unlawful employment discrimination.  (Id.)

That same day, Plaintiff filed a complaint with the Equal Employment Opportunity Commission

("EEOC").  (See id. at 3)

On September 21, 2015, the SDHR dismissed the complaint, finding that there

was no probable cause to believe that CWPW had engaged in an unlawful discriminatory

practice.  (Vento Decl., Ex. B (Dkt. No. 12-2))  As to Plaintiff's complaints about Colombi's

compensation and promotion, the SDHR noted that Plaintiff's claims were time-barred, because

Plaintiff's SDHR complaint was not filed until fourteen months after the conduct complained of.

(Id. at 2-3)  As to the merits, the SDHR noted that Colombi performed "different and additional

duties" than Plaintiff, worked in a different department of CWPW, had taken a pay cut in

accepting her initial position at CWPW, and had "17 years of experience in medical office

operations compared to [Plaintiff's] 5 years [of] work related experience."  (Id. at 3)  The SDHR

also noted that Plaintiff had "received a raise every year since she started [at CWPW] in 2009."

(Id.)

As to Plaintiff's complaints concerning the Operations Manager position, the

SDHR noted that this complaint was likewise time-barred, because Plaintiff had been denied

---

[3]  The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Filing System.

4

promotion in July 2013, but did not file her SDHR complaint until March 23, 2015.  (Id.)  On the

merits, the SDHR noted that (1) there was no evidence that Plaintiff had applied for the

Operations Manager position; and (2) the "position required a Bachelor's degree or three to four

years related experience in supervisor/administrative capacity," and Plaintiff "held a two-year

associate degree and did not have prior supervisory/administrative experience."  (Id.)  Finally,

the SDHR noted that Paulette Katzenstein – the individual chosen for the Operations Manager

position – was "the wife of the head of the practice Dr. Katzenstein [and] possessed the

minimum qualifications for the position."  (Id.)

        The SDHR concluded that there was no evidence that "similarly situated

individuals were given promotions and wage increases based on their national origin and creed,"

and that CWPW had "provided a legitimate, non-discriminatory reason for its actions which

were not found to be pretextual."  (Id. at 4)

        As to Plaintiff's termination, the SDHR's investigation revealed that on July 30,

2014, Plaintiff "made physical threats" to Myrna Gonzalez, another CWPW employee.  (Id. at 3)

Plaintiff told Gonzalez that she would "kick her butt."  (Id.)  Mildred Rivera, another CWPW

employee, witnessed the incident and confirmed Plaintiff's misconduct.  (Id.)  While Gonzalez

was given a "verbal warning and advised of progressive discipline for future violations,"

Plaintiff's conduct violated CWPW's policy on workplace violence, and CWPW concluded that

"termination was the appropriate penalty."  (Id. at 3-4)  The SDHR found no evidence of

discriminatory animus in CWPW's investigation and handling of this incident and – given the

evidence that Plaintiff had violated CWPW's policy on workplace violence – concluded that the

termination did not constitute retaliation for Plaintiff's earlier complaints about alleged

discrimination.  (Id. at 4)

On October 29, 2015, the EEOC issued a "Dismissal and Notice of Rights." (Cmplt. (Dkt. No. 2) at 5)  The dismissal notice informed Plaintiff that "[t]he EEOC ha[d] adopted the findings of the [SDHR]," and advised Plaintiff of her right to file a lawsuit in federal court:

> This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.

(Id.) (emphasis in original)

In the Complaint, Plaintiff alleges that she received the EEOC's right-to-sue letter on October 29, 2015 – the same day it was issued.  (Id. at 4)

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on January 29, 2016, asserting claims under Title VII and the ADEA.  (Cmplt. (Dkt. No. 2))  Plaintiff claims that Defendant discriminated against her on the basis of race, religion, and national origin by failing to promote her, by maintaining "[u]nequal terms and conditions of . . . employment," by violating the Equal Pay Act, by terminating her employment, and by retaliating against her for having engaged in protected activity.[4]  (Id. at 2-3, 9)

---

[4] As noted above, Plaintiff checked off a box in her form complaint indicating that she is bringing a claim under the ADEA, but she has pled no facts making out an age discrimination claim.  (See Cmplt. (Dkt. No. 2) at 3)  In particular, the Complaint contains no allegations concerning Plaintiff's age.  Moreover, in response to a question in the form complaint about the grounds on which Defendant unlawfully discriminated against her, Plaintiff did not check off a box for "age" and did not respond to a question about her date of birth.  (Id.)  Given these circumstances, it does not appear that Plaintiff intends to pursue an age discrimination claim.  In any event, any claim under the ADEA will be dismissed under Rule 12(b)(6) for failure to state a claim, both because Plaintiff has not pled sufficient facts to make out an ADEA claim, and because she has not exhausted her administrative remedies.

On May 3, 2016, Defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 10)  Defendant contends that (1) Plaintiff's claims are untimely because she did not file the Complaint within 90 days of receiving the EEOC's right-to-sue letter; (2) Plaintiff's age discrimination claim under the ADEA must be dismissed for failure to exhaust administrative remedies; (3) Plaintiff's Equal Pay Act claim should be dismissed for failure to state a claim; and (4) Plaintiff's claim that she was wrongfully denied a promotion should be dismissed as time-barred.  (See id. at 1-2; Def. Moving Br. (Dkt. No. 11) at 8-13)

On October 20, 2016, this Court referred Defendant's motion to Magistrate Judge Freeman for a Report and Recommendation ("R & R").  (Dkt. No. 19)  As of that time, Plaintiff had not submitted any opposition to Defendant's motion.  On October 24, 2016, Judge Freeman issued an order directing Plaintiff to file an opposition to Defendant's motion to dismiss by November 21, 2016.  (Dkt. No. 20)  Judge Freeman's order contains the following warning: "Plaintiff is cautioned that, if she fails to file an opposition to Defendant's motion by November 21, 2016, then this Court may recommend to Judge Gardephe that her Complaint be dismissed for failure to prosecute."  (Id. at 1) (emphasis in original)  Although a copy of this order was mailed to Plaintiff (id. at 2), she did not file an opposition to Defendant's motion to dismiss.

On December 1, 2016, Judge Freeman issued an order directing Plaintiff "to show cause, by December 16, 2016, why [Judge Freeman] should not recommend to Judge Gardephe that this case be dismissed without prejudice, for failure to prosecute."  (Dkt. No. 22 at 1-2) (emphasis in original).  Although a copy of Judge Freeman's order to show cause was mailed to Plaintiff (id. at 4), Plaintiff did not respond to the order to show cause.

On December 30, 2016, Judge Freeman issued an R & R recommending that the Complaint be dismissed without prejudice for failure to prosecute.  (Dkt. No. 24)  In the R & R,

Judge Freeman notified Plaintiff that she had fourteen days from the issuance of the R & R to file any objections, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, and that a failure to file objections within that time would result in a waiver of objections and would preclude appellate review.  (Id. at 2)  Plaintiff filed no objections to the R & R.[5]

**DISCUSSION**

## I.   LEGAL STANDARDS

### A.   Review of Magistrate Judge's Report and Recommendation

In evaluating a magistrate judge's R & R, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'"  Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Inv'r Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).

Where a party submits a timely objection to an R & R, the Court reviews those portions of the report to which the party objects under a de novo standard.  See Fed. R. Civ. P. 72(b)(3).  Where a party does not file an objection to an R & R, the right to appellate review is waived.  See Thomas v. Arn, 474 U.S. 140, 147-55 (1985); see also Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." (citing Small v. Sec'y of Health and Human

---

[5]  In a January 3, 2017 letter, Defendant asks that the Complaint be dismissed with prejudice. (Jan. 3, 2017 Def. Ltr. (Dkt. No. 25))

Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam))); Spence v. Superintendent, Great Meadow

Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally

waives any further judicial review of the findings contained in the report.").

### B.    Dismissal for Failure to Prosecute

Fed. R. Civ. P. 41 provides that an action may be involuntarily dismissed "[i]f the

plaintiff fails to prosecute or to comply with [the Federal Rules] or a court order. . . ." Fed. R.

Civ. P. 41(b).  "Although Rule 41(b) expressly addresses a situation in which a defendant moves

to dismiss for failure to prosecute, it has long been recognized that a district court has the

inherent authority to dismiss for failure to prosecute sua sponte." Williams v. Wellness Med.

Care, P.C., No. 11 Civ. 5566 (KMK), 2013 WL 5420985, at *7 (S.D.N.Y. Sept. 27, 2013) (citing

LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001) (citing Link v. Wabash

R.R. Co., 370 U.S. 626, 630 (1962))).

A district court considering a Rule 41(b) dismissal must weigh five factors:

> "(1) the duration of the plaintiff's failure to comply with the court order, (2)
> whether plaintiff was on notice that failure to comply would result in dismissal,
> (3) whether the defendants are likely to be prejudiced by further delay in the
> proceedings, (4) a balancing of the court's interest in managing its docket with the
> plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge
> has adequately considered a sanction less drastic than dismissal."

Baptiste v. Sommers, 768 F.3d 212, 216 (2d Cir. 2014) (quoting Lucas v. Miles, 84 F.3d 532,

535 (2d Cir. 1996)).  "No single factor is generally dispositive." Id. (citing Nita v. Connecticut

Dep't of Envtl. Prot., 16 F.3d 482, 485 (2d Cir. 1994)).

### C.    Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Kassner, 496 F.3d at 237 (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

Because Plaintiff is proceeding pro se, this Court is required to read the Complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed.'" (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Accordingly, this Court will construe the Complaint "'to raise the strongest arguments that [it] suggest[s].'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)).  "[T]he court need not accept as true 'conclusions of law or unwarranted deductions of fact'" in a pro se complaint, however.  Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)).

## II.   ANALYSIS

### A.   Dismissing for Failure to Prosecute Where
### Plaintiff Does Not Respond to a Motion to Dismiss

On December 30, 2016, Magistrate Judge Freeman issued an R & R

recommending that this Court dismiss the Complaint for failure to prosecute.  She explained her

recommendation as follows:

> This Court having ordered pro se plaintiff Tulen Rivera ("Plaintiff") to show
> cause by December 16, 2016, why this Court should not recommend that this case
> be dismissed, sua sponte, for failure to prosecute; and Plaintiff having made no
> submission to the Court in response to the Court's Order To Show Cause, despite
> two weeks having passed since the stated deadline; and the Court having also
> received no opposition from Plaintiff to Defendant's pending motion to dismiss
> the Complaint, even though that motion was filed nearly eight months ago and
> this Court not only sua sponte extended Plaintiff's deadline to file an opposition,
> but also explicitly cautioned her that a failure to do so could result in a dismissal
> of her claims; and it appearing, in fact, from the Court's Docket, that Plaintiff has
> not been in communication with the Court at all, since commencing this action 11
> months ago; I respectfully recommend, for these reasons and the reasons stated in
> the Court's December 1, 2016 Order To Show Cause . . . that this action be
> dismissed without prejudice and this case be closed on the Docket of the Court.

(R & R (Dkt. No. 24) at 1) (internal citations omitted)

The Second Circuit has stated, however, that in the context of a Rule 12(b)(6)

motion to dismiss, "'[w]here . . . the pleadings are themselves sufficient to withstand dismissal, a

failure to respond . . . cannot constitute "default" justifying dismissal of the complaint.'"  McCall

v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000) (quoting Maggette v. Dalsheim, 709 F.2d 800, 802

(2d Cir. 1983)).

In McCall, the Second Circuit noted that Rule 12(b)(6) and Rule 12(c)

motions assume the truth of a pleading's factual allegations and test only its legal
sufficiency.  Thus, although a party is of course to be given a reasonable
opportunity to respond to an opponent's motion, the sufficiency of a complaint is
a matter of law that the court is capable of determining based on its own reading
of the pleading and knowledge of the law.  If a complaint is sufficient to state a

> claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.
>
> The district court in the present case did not address the merits of defendant's Rule 12(b)(6) motion and appears to have dismissed the complaint solely on the ground that [Plaintiff] did not respond to the motion. Dismissal on that basis was error.

McCall, 232 F.3d at 322-23 (citation omitted) (addressing merits of motion to dismiss, where district court had dismissed pro se plaintiff's complaint for failure to file opposition to motion to dismiss).

Acknowledging that Plaintiff has not responded in any fashion to two court orders – both of which explicitly warn that a failure to respond may result in the magistrate judge recommending that Plaintiff's action be dismissed – this Court will not, in light of McCall's reasoning, adopt the R & R's recommendation that this action be dismissed without prejudice for failure to prosecute. Instead, the Court considers below the merits of Defendant's motion to dismiss.

### B.   Defendant's Rule 12(b)(6) Motion to Dismiss

In support of its motion to dismiss, Defendant argues, inter alia, that (1) Plaintiff's age discrimination claim under the ADEA must be dismissed for failure to exhaust administrative remedies; (2) Plaintiff's remaining discrimination claims are time-barred, because she did not file the Complaint within 90 days of receiving the EEOC's right-to-sue letter; and (3) Plaintiff's Equal Pay Act claim should be dismissed for failure to state a claim. (Def. Moving Br. (Dkt. No. 11) at 8-13)

### 1.   <u>Exhaustion of Administrative Remedies</u>

#### a.   <u>Applicable Law</u>

"In order to bring a claim under Title VII . . . or the ADEA, a plaintiff must first exhaust her administrative remedies with the EEOC or the equivalent state-level agency, in this case the NYSDHR." <u>Maack v. Wyckoff Heights Med. Ctr.</u>, No. 15 Civ. 3951 (ER), 2016 WL 3509338, at *10 (S.D.N.Y. June 21, 2016) (citing <u>Fleming v. Verizon N.Y., Inc.</u>, 419 F. Supp. 2d 455, 462, 467 (S.D.N.Y. 2005); <u>Holowecki v. Fed. Express Corp.</u>, 440 F.3d 558, 562-63 (2d Cir. 2006)). Exhaustion requires that "the claims forming the basis of [the federal] suit must first be presented in a complaint to the EEOC or the equivalent state agency." <u>Williams v. N.Y. City Housing Auth.</u>, 458 F.3d 67, 69 (2d Cir. 2006).

"It is well-settled, however, that unexhausted claims may be brought in federal court 'if they are "reasonably related" to the claim filed with the agency.'" <u>Ramsy v. Marriot Int'l, Inc.</u>, No. 16 Civ. 04865 (AJN), 2017 WL 773604, at *6 (S.D.N.Y. Feb. 24, 2017) (quoting <u>Williams</u>, 458 F.3d at 69). "In determining whether a claim is 'reasonably related' to the EEOC charge, 'the focus should be on the factual allegations made in the [EEOC] charge itself' and on whether those allegations 'gave the [EEOC] adequate notice to investigate' the claims asserted in court." <u>Clarke v. Roslyn Union Sch. Dist.</u>, No. 11 Civ. 2957 (JFB) (AKT), 2012 WL 2916759, at *5 (E.D.N.Y. July 17, 2012) (quoting <u>Williams</u>, 458 F.3d at 70). Courts have applied the "reasonably related" exception in the following circumstances: where "'(1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'"

Ramsy, 2017 WL 773604, at *6 (quoting Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002))
(internal quotation marks omitted).

### b.   Analysis

In her SDHR complaint, Plaintiff claims that CWPW denied her a promotion and
subjected her to unequal conditions of employment because she is a Muslim and of Turkish
origin. (Cmplt. (Dkt. No. 2) at 6-9)  The SDHR complaint does not raise claims of age or race
discrimination, however. (See id.)  Accordingly, Plaintiff has not exhausted her administrative
remedies as to those claims. "[U]nexhausted claims may [still] be brought in federal court 'if
they are "reasonably related" to the claim[s] filed with the agency,'" however. Ramsy, 2017 WL
773604, at *6.

Here, the Complaint filed with this Court contains no facts showing how
Defendant allegedly discriminated against Plaintiff based on her age.  Accordingly, "Plaintiff's
age discrimination claim cannot be saved by the 'reasonably related' exception," because there is
no basis on which this Court could find that Plaintiff's age discrimination claim is "reasonably
related to the . . . national origin[] and religion discrimination claims Plaintiff did present to the
[agency]." Robinson v. Macy's, No. 14 Civ. 4937 (CM), 2014 WL 6997598, at *5 (S.D.N.Y.
Dec. 5, 2014) (concluding that unsupported age discrimination claim was not reasonably related
to race, national origin, and religion discrimination claims premised on allegations of, inter alia,
failure to promote and unequal wages) (citing Tanvir v. N.Y.C. Health and Hosps. Corp., 480 F.
App'x 620, 621 (2d Cir. 2012)).

As to Plaintiff's race discrimination claim, the analysis is different.  "The Second
Circuit has recognized a claim of race discrimination as 'reasonably related' to a claim of
national origin discrimination where . . . [both claims are premised] on preferential treatment."

Morrow v. Metro. Transit Auth., No. 08 Civ. 6123 (DLC), 2009 WL 1286208, at *6 (S.D.N.Y.

May 8, 2009) (citing Mathirampuzha v. Potter, 548 F.3d 70, 77 (2d Cir. 2008)).  Because

"preferential treatment [may] implicitly suggest[] some form of potential racial discrimination in

addition to an illegitimate preference premised on national origin," see Mathirampuzha, 548 F.3d

at 77, Plaintiff's allegations of national origin and religion discrimination by CWPW are likely

sufficient to give "'the [agency] adequate notice to investigate' the [race discrimination] claim[]

[now] asserted in court." See Clarke, 2012 WL 2916759, at *5.

Accordingly, Plaintiff's claim of age discrimination under the ADEA will be

dismissed for failure to exhaust administrative remedies.[6]  Plaintiff's claim of race discrimination

under Title VII will not be dismissed for failure to exhaust administrative remedies, because this

claim is "reasonably related" to the claims presented to the SDHR.  As discussed below,

however, Plaintiff's race discrimination claim is time-barred.  See Hassan v. NYC Off Track

Betting Corp., No. 05 Civ. 9677 (LAK), 2007 WL 678422, at *3 (S.D.N.Y. Mar. 6, 2007)

("[S]ince the plaintiff filed his Title VII claim with the court untimely, any claim that might

reasonably be related to it and, thus, properly before the court for adjudication in this Title VII

action, would also be time-barred.").

2.   **Timeliness**

a.   **Applicable Law**

Under Title VII, a claim must be filed in federal court within 90 days of the

plaintiff's receipt of a right-to-sue letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1).  "The

[90-day] requirement should be strictly enforced and not extended 'by even one day.'"  Holmes

---

[6] Even if Plaintiff's age discrimination claim were not dismissed for failure to exhaust
administrative remedies, it would be dismissed for failure to state a claim.  The Complaint
contains no factual allegations that support an age discrimination claim.  Most fundamentally,
Plaintiff has not pled her age.  (See Cmplt. (Dkt. No. 2))

v. NBC/GE, 914 F. Supp. 1040, 1042 (S.D.N.Y. 1996) (quoting Johnson v. Al Tech Specialties

Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984)); see also Tiberio v. Allergy Asthma Immunology

of Rochester, 664 F.3d 35, 38 (2d Cir. 2011) (finding claim time-barred where complaint was

filed 93 days after presumptive receipt of right-to-sue letter); Glover v. Fed'n of Multicultural

Programs, No. 14 Civ. 4006 (KAM) (LB), 2015 WL 4600645, at *5 (E.D.N.Y. July 29, 2015)

(finding claim time-barred where it was filed "one day late"; granting defendant's motion to

dismiss).

"There is a presumption that a notice provided by a government agency was

mailed on the date shown on the notice." Tiberio, 664 F.3d at 37 (citing Sherlock v. Montefiore

Med. Ctr., 84 F.3d 522, 526 (2d Cir. 1996) (citing Baldwin Cnty. Welcome Ctr. v. Brown, 466

U.S. 147, 148 & n.1 (1984))). "There is further a presumption that a mailed document is

received three days after its mailing." Id. (citing Sherlock, 84 F.3d at 525); see also Fed. R. Civ.

P. 6(d) ("When a party may or must act within a specified time after being served and service is

made under Rule 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented

to), 3 days are added after the period would otherwise expire under Rule 6(a).").

"Although such presumptions are convenient and reasonable in the absence of

evidence to the contrary," the Second Circuit has found that the presumptions are not

"irrebuttable." Sherlock, 84 F.3d at 526. "If a claimant presents sworn testimony or other

admissible evidence from which it could reasonably be inferred either that the notice was mailed

later than its typewritten date or that it took longer than three days to reach her by mail, the initial

presumption is not dispositive." Id. (citing Smith v. Local Union 28 Sheet Metal Workers, 877

F. Supp. 165, 172 (S.D.N.Y. 1995)). This rebuttable presumption applies "even in the context of

a motion to dismiss," Dubreus v. N. Shore Univ. Hosp., No. 12 Civ. 940 (DRH) (GRB), 2012

WL 5879110, at *3 (E.D.N.Y. Nov. 20, 2012), and allegations in a complaint – in addition to testimony or affidavits – may be sufficient to rebut the presumption.  See Salerno v. City Univ. of N.Y., No. 99 Civ. 11151 (NRB), 2002 WL 31856953, at *4 n.6 (S.D.N.Y. Dec. 19, 2002) (finding that Sherlock does not "maintain[] that [affidavits or other admissible] evidence [is] required where, as here, the complaint itself alleges [receipt or] non-receipt").

### b.    Analysis

Here, the EEOC issued a right-to-sue letter to Plaintiff on October 29, 2015, and mailed the letter to Plaintiff on that date.[7]  (Cmplt. (Dkt. No. 2) at 5)  Plaintiff filed the Complaint on January 29, 2016.  (Id. at 1)  She expressly alleges in the Complaint that "[t]he Equal Employment Opportunity Commission issued a Notice of Right to Sue letter, which I received on October 29, 2015" – that is, the same day that the EEOC mailed the letter.  (Id. at 4-5)  Accepting this allegation as true – as is required on a motion to dismiss – Plaintiff filed the Complaint 92 days after receiving her right-to-sue letter – two days beyond the 90-day limitations period.

In determining the timeliness of the Complaint, this Court must consider the applicability of the "presumption that a mailed document is received three days after its mailing."  Tiberio, 664 F.3d at 37.  If the presumption applies, then the Complaint is timely.

Plaintiff specifically alleges in the Complaint, however, that she received the right-to-sue letter on October 29, 2015.  (Cmplt. (Dkt. No. 2) at 4)  "[C]ourts in this circuit have repeatedly held that an allegation of the date of receipt of a right-to-sue letter must be credited as true on a motion to dismiss."  Williams v. City of New York, No. 12 Civ. 8518 (RJS), 2014 WL 1383661, at *10 (S.D.N.Y. Mar. 26, 2014), aff'd, 602 Fed. App'x 28 (2d Cir. 2015); see also

---

[7]  The right-to-sue letter lists the "Date Mailed" as October 29, 2015.  (See Cmplt. (Dkt. No. 2) at 5)

Carpenter v. City of New York, No. 09 Civ. 4524 (ARR) (LB), 2010 WL 2680427, at *2 (E.D.N.Y. June 30, 2010) ("In cases where a complaint does allege [the date on which plaintiff received the right-to-sue letter], courts in this circuit have held that the principle that all factual allegations in the complaint must be taken as true for the purposes of Rule 12(b)(6) motions applies."); Newell v. New York City Dep't of Transp., No. 08 Civ. 1369 (NG) (LB), 2010 WL 1936226, at *2 (E.D.N.Y. May 12, 2010) ("Courts in this circuit have held that the principle in Rule 12(b)(6) motions that a pleading's factual allegations must be taken as true applies to allegations that a plaintiff did not receive his EEOC letter within three days after the EEOC mailed it."); Ruiz v. N.Y. City Fire Dep't, No. 00 Civ. 4371 (AGS), 2001 WL 767009, at *2 (S.D.N.Y. July 9, 2001) (same).

"[T]he requirement that [the court] accept the allegations in the complaint as true overcomes any presumption that may exist." Salerno, 2002 WL 31856953, at *4 n.6 (declining to apply presumption that right-to-sue letter was received three days after mailing where plaintiff specifically alleged non-receipt of letter); see also Ruiz, 2001 WL 767009, at *2 (finding "no authority for the proposition that [the three-day mailing presumption] overrides the[] well-established standards for deciding a motion to dismiss and requires a court to disregard a complaint's express allegations").

The cases cited above address circumstances in which a plaintiff alleges in the Complaint either that she received the right-to-sue letter more than three days after it was mailed, or did not receive the letter at all.  Here, of course, Plaintiff alleges that she received the right-to-sue letter on the same day that it was mailed.  While at least one court has permitted a plaintiff to offer evidence that the date of receipt pled in a complaint is incorrect – see Pacheco v. Int'l Bus.

Machines Corp., No. 90 Civ. 1173, 1991 WL 87538 (N.D.N.Y. May 24, 1991)[8] – here there is no

evidence to rebut the date pled in the Complaint.  Absent such evidence, the Court accepts as

true Plaintiff's allegation that she received the EEOC's right-to-sue letter on October 29, 2015.

"As with all Rule 12(b)(6) motions, on an unopposed motion to dismiss, a court is

to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency.'"

Accurate Grading Quality Assur., Inc v. Thorpe, No. 12 Civ. 1343 (ALC), 2013 WL 1234836, at

*5 (S.D.N.Y. Mar. 26, 2013) (quoting McCall, 232 F.3d at 322).  Moreover, as discussed above,

"the requirement that [the court] accept the allegations in the complaint as true overcomes any

presumption that may exist [concerning the date a right-to-sue letter was received]."  Salerno,

2002 WL 31856953, at *4 n.6.

Because (1) the Complaint states that Plaintiff received the EEOC's right-to-sue

letter on October 29, 2015, and (2) the Complaint was not filed until January 29, 2016 – 92 days

after Plaintiff's alleged receipt of the right-to-sue letter – Plaintiff's Title VII claims are time-

barred.

---

[8]  In Pacheco, the EEOC right-to-sue letter was dated July 25, 1990, and the complaint alleged
that plaintiff received the right-to-sue letter that same day.  Pacheco, 1991 WL 87538, at *1.
After defendant moved to dismiss the action as time-barred, plaintiff responded by affidavit that
the date listed in the complaint "was not the actual date of receipt."  Id.  While plaintiff was
"unsure of the date he received the right-to-sue letter[,] he [was] certain . . . that he did not
receive it on [the same day it was mailed]."  Id.  The court resolved the issue by disregarding the
date of receipt pled in the Complaint:

> Significantly, [defendant] did not receive a copy of the right-to-sue letter until
> July 27, 1990[, two days after it was presumptively mailed].  Given that
> undisputed fact, combined with the fact that plaintiff lives in upstate New York,
> in this court's view, it would be highly unusual, if not impossible, for the plaintiff
> to have received the letter the same day it was written and allegedly mailed.
> Therefore, the court cannot agree with [defendant's] position that the actual date
> of receipt by plaintiff in this case is July 25, 1990.

Id. at *3.  The court concluded that "because the date of receipt is in dispute, this court believes
that Fed. R. Civ. P.6[] suggests an appropriate time span of [of three days] to allow between
mailing and receipt of notice."  Id. at *3-4.

3.     **Equal Pay Act Claim**

a.     **Applicable Law**

The Equal Pay Act ("EPA") prohibits an employer from "paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). "Thus, to prove a violation of the EPA, a plaintiff must demonstrate that '[(1)] the employer pays different wages to employees of the opposite sex; [(2)] the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and [(3)] the jobs are performed under similar working conditions.'" E.E.O.C. v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254-55 (2d Cir. 2014) (quoting Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999)) (alterations in original).

The Equal Pay Act "provides for a two-year statute of limitations for standard violations and a three-year statute of limitations for willful violations." Maack, 2016 WL 3509338, at *11 (citing Barrett v. Forest Labs., Inc., No. 12 Civ. 5224 (RA), 2015 WL 4111827, at *2 (S.D.N.Y. July 8, 2015)). "Because a violation of the Equal Pay Act occurs on each occasion when a plaintiff is compensated in a discriminatory manner, the statute of limitations is calculated based on the last paycheck received within the two or three year period." Manko v. Deutsche Bank, No. 02 Civ. 10180 (TPG), 2004 WL 574659, at *7 (S.D.N.Y. Mar. 22, 2004), aff'd, 354 F. App'x 559 (2d Cir. 2009) (citation omitted). Moreover, "[c]laims brought pursuant to the Equal Pay Act need not be administratively exhausted prior to filing suit." McGullam v. Cedar Graphics, Inc., No. 04 Civ. 2891 (DRH) (AKT), 2007 WL 4326819, at *1 (E.D.N.Y. Dec. 7, 2007) (citing Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 640 (2007)); see also

20

Byrne v. Telesector Res. Grp., Inc., No. 04 Civ. 76S, 2005 WL 464941, at *10-11 (W.D.N.Y. Feb. 25, 2005) ("Unlike Title VII, the EPA does not require a grievant to exhaust administrative remedies prior to the commencement of a civil action. Therefore, to the extent [plaintiff] seeks relief under the EPA for an allegedly discriminatory wage disparity, it is immaterial whether she raised that issue in her EEOC charge."), aff'd, 339 F. App'x 13 (2d Cir. 2009); Manko, 2004 WL 574659, at *7 (noting that Equal Pay Act claims "are not required to be administratively exhausted prior to filing suit").

### b.   Analysis

CWPW terminated Plaintiff's employment on August 1, 2014, and Plaintiff filed the Complaint on January 29, 2016. (See Cmplt. (Dkt. No. 2) at 3, 6-9)  Because this action falls within the two-year limitations period applicable to Equal Pay Act claims, Plaintiff's claim under the Act is timely.

To prove a violation of the Equal Pay Act, however, a plaintiff must demonstrate, inter alia, that "'the employer pays different wages to employees of the opposite sex.'" E.E.O.C., 768 F.3d at 254-55; see also Barrett v. Forest Labs., Inc., 39 F. Supp. 3d 407, 452 (S.D.N.Y. 2014) ("An Equal Pay Act plaintiff . . . must demonstrate that she received less pay than a male who performed a 'substantially similar' job."). "'[E]ven at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim' because a 'plaintiff must allege at least some facts to support contentions that her employer violated the EPA.'" Suzuki v. State Univ. of N.Y. Coll. at Old Westbury, No. 08 Civ. 4569 (TCP), 2013 WL 2898135, at *3 (E.D.N.Y. June 13, 2013) (quoting Bass v. World Wrestling Fed'n Entm't, Inc., 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001)). "Bald allegations that male

employees were paid more than female employees[] . . . will not survive a motion to dismiss." Id. at *4.

Here, Plaintiff alleges that (1) "[i]n July of 2013, [she] discovered that CWPW paid other less qualified, junior medical assistants an hourly rate greater than that which [she] was paid"; (2) even after she complained to management, "[her] hourly rate or pay remained lower than [that] which was . . . paid to less qualified junior medical assistants"; and (3) "[i]n January 2014, CWPW hired Stella Colombi as a Front Desk Receptionist at an hourly rate higher than that which [she] was paid." (Cmplt. (Dkt. No. 2) at 8)

The Complaint does not identify any male employee who performed substantially similar work to Plaintiff, and who was compensated at a higher hourly rate, however. While Plaintiff refers to "less qualified, junior medical assistants," she does not allege that these medical assistants are male. Plaintiff's allegations are too vague and conclusory to survive Defendant's motion to dismiss. See Suzuki, 2013 WL 2898135, at *4 (dismissing Equal Pay Act claim where plaintiff "d[id] not identify any male faculty members in her department during the relevant time with similar experience who earned more for substantially similar work"). Accordingly, Plaintiff's Equal Pay Act claim will be dismissed.

## III.   LEAVE TO AMEND

"[L]eave to amend should be freely granted when 'justice so requires[.]'" Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)). "'[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795-96 (2d Cir. 1999) (quoting Branum v. Clark, 927 F.2d 698, 705

(2d Cir. 1991)).  Moreover, "[a] pro se plaintiff . . . should be afforded an opportunity fairly

freely to amend [her] complaint."  Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980).

        "'Where it appears that granting leave to amend is unlikely to be productive,

however, it is not an abuse of discretion to deny leave to amend.'"  Lucente v. Int'l Bus.

Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting Ruffolo v. Oppenheimer & Co., 987

F.2d 129, 131 (2d Cir. 1993)).  "One appropriate basis for denying leave to amend is that the

proposed amendment is futile. . . . An amendment to a pleading is futile if the proposed claim

could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  Id. (internal

citations omitted).

        Here, it is not clear that it would be futile to grant leave to amend.  See, e.g.,

Brown v. JPMorgan Chase Bank, N.A., No. 12 Civ. 544 (CBA) (LB), 2012 WL 6731610, at *1

(E.D.N.Y. Nov. 29, 2012) (granting pro se plaintiff leave to amend complaint in order to address

the timeliness of her claims under the ADA's 90-day limitations period, and whether equitable

tolling applied); Black v. N.Y. Univ. Med. Ctr., No. 94 Civ 9074 (SS), 1996 WL 280802, at *4

(S.D.N.Y. May 24, 1996) (granting pro se plaintiff leave to amend complaint in order to add

factual allegations in support of Equal Pay Act claim).  Accordingly, leave to amend is granted.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted. Plaintiff will file any Amended Complaint by April 20, 2017. The Clerk of the Court is directed to terminate the motion (Dkt. No. 10), and to mail a copy of this Order to pro se Plaintiff Tulen Rivera, 334 East 205th Street, Apt. 44, Bronx, NY 10467.

Dated: New York, New York
      March 18, 2017

                SO ORDERED.

                Paul G. Gardephe
                United States District Judge